**KILPATRICK TOWNSEND &
STOCKTON LLP**
Robert N. Potter (RP5757)
H. Forrest Flemming, III (HF5835517)
1114 Avenue of the Americas
New York, New York 10036-7703
Telephone:  (212) 775-8733
rpotter@kilpatricktownsend.com
FFlemming@kilpatricktownsend.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MOMOIP LLC, a New York entity,<br><br>                              Plaintiff,<br><br>        v.<br><br>YUZU KITCHEN LLC, a New York entity; DONG CHEN A/K/A MAX CHEN, an individual; and HAOCHENG SUN, an individual,<br><br>                              Defendants. | 22 Civ. _____<br><br>**COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff MomoIP LLC states the following for its Complaint against Defendants Yuzu Kitchen LLC, Dong Chen a/k/a Max Chen, and Haocheng Sun (collectively, "Yuzu Kitchen").

<u>SUMMARY OF THE ACTION</u>

1.      Plaintiff is the holding company for the trademarks used by the "Momofuku Group," a group of food and beverage businesses started in New York in 2004 by [celebrity chef] David Chang (together with MomoIP, "Momofuku").

2.      Momofuku—a word that translates to "lucky peach"—has owned valuable trademark rights in the below peach design (the "Lucky Peach") for nearly twenty years.



3.      Momofuku has used the Lucky Peach in connection with its iconic restaurants throughout New York City and the greater United States. The trademark appears on Momofuku's signage for NYC restaurants Noodle Bar, Ko, and Ssäm Bar, and is used in connection with various marketing and advertising materials, food products, and Mr. Chang's best-selling memoir.

 

 

 




4.      In addition to the strong common-law trademark rights generated by Momofuku's longstanding use of the Lucky Peach logo, Momofuku also owns multiple federal trademark registrations for the Lucky Peach, dating back to 2009.

5.      Momofuku and its NYC restaurants have been awarded multiple Michelin stars, have received multiple James Beard Foundation awards, and have been prominently featured on numerous occasions in the *New York Times*, *New York Magazine*, *The New Yorker*, *The Wall Street Journal*, *Time Magazine*, and *USA Today*.

6.      Despite Momofuku's federally-registered trademark rights in the Lucky Peach, and in an effort to capitalize on the fame of Momofuku's restaurants and its goodwill with the people of New York, Defendant Yuzu Kitchen LLC—at the direction of Defendants Chen and Sun—recently began using a virtually identical imitation of the Lucky Peach in connection with a Japanese restaurant in New York City:



7.      Yuzu Kitchen's infringing peach design uses a nearly identical color scheme with black text that immediately calls to mind Momofuku's Lucky Peach and its many iconic restaurants.

8.      For months, Momofuku has sent letters to Yuzu Kitchen, demanding that Yuzu Kitchen immediately cease use of the Lucky Peach. Yuzu Kitchen never once responded, and instead continues blatantly to infringe Momofuku's federally registered trademark.

9.      Momofuku has therefore been forced to bring this is action at law and in equity for trademark infringement, unfair competition, and unfair business practices arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq.* ("Lanham Act"); the fair business practices and unfair and deceptive trade practices acts of New York; and New York common law. Among other relief, Momofuku asks this Court to: (a) permanently enjoin Yuzu Kitchen from using the Lucky Peach in connection with Yuzu Kitchen's restaurant or any other food- or beverage-related goods and services; and (b) award Momofuku punitive damages, attorneys' fees, and costs.

## <u>PARTIES</u>

10.      Plaintiff MomoIP LLC is a limited liability company organized and existing under the laws of the State of Delaware, having its principal place of business at 104 W. 27th St., 9th Floor, New York, New York 10001.

11.     Defendant Yuzu Kitchen LLC is a limited liability company organized and existing under the laws of the State of New York, having its principal place of business at 37 W. 43rd St., New York, New York 10036.

12.     Defendant Dong Chen, also known as Max Chen, is an individual domiciled in the State of New York and residing at 10 Riverside Blvd., Apt. 28A, New York, New York 10069.

13.     Defendant Haochen Sun is an individual domiciled in the State of New York and residing at 21 West End Ave., PH13, New York, New York 10023.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction under section 39 of the Lanham Act, 15 U.S.C. § 1121 and under 28 U.S.C. §§ 1331 and 1338. Subject matter jurisdiction over Momofuku's related state and common law claims is proper pursuant to 28 U.S.C. §§ 1338 and 1367.

15.     This Court has both general and specific personal jurisdiction over Yuzu Kitchen LLC  because (a) Yuzu Kitchen LLC is organized under the laws of New York and has its principal place of business is in this District; (b) Yuzu Kitchen LLC regularly transacts and conducts business within the State of New York, including in this District, to such an extent that it is at home in New York; and (c) Yuzu Kitchen LLC purposefully availed itself of the laws of New York by operating a restaurant within New York, in connection with which it uses a mark that infringes the Lucky Peach.

16.      This Court has personal jurisdiction over Defendants Chen and Sun because, upon information and belief, both are domiciled in the State of New York.

17.     Venue is proper in proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1),

5

(b)(2), and (c)(2), because all three defendants reside or may be found in this District, and because a substantial part of the events giving rise to Momofuku's claims occurred in this District.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

**A.      Momofuku and its Valuable Trademark Rights**

18.      Plaintiff MomoIP is the holding company for the trademarks used by, and licensed to, the "Momofuku Group," a group of food and beverage businesses opened by David Chang in New York beginning in 2004. Plaintiff and the Momofuku Group, together with their respective predecessors-in-interest, are collectively referred to here as "Momofuku."

19.      At least as early as 2004, Momofuku began using in commerce the Lucky Peach, depicted below, in connection with a restaurant and bar in New York.



20.      The Lucky Peach quickly came to signify to residents of New York, and to out-of-state visitors to New York, the quality and reputation of Momofuku's bar and restaurant services.

21.      By virtue of a valid assignment, Plaintiff is the owner of a federal trademark registration, Reg. No. 3,637,913, issued by the United States Patent and Trademark Office ("PTO") on June 16, 2009, for the Lucky Peach, as depicted below, for "Bar services; Restaurant services, including sit-down service of food and take-out restaurant services."



Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is valid, subsisting, and incontestable. A true and correct copy of the Certificate of Registration for this mark is attached as **Exhibit 1**.

22.     Plaintiff is the owner of a federal trademark registration, Reg. No. 4,841,024, issued by the United States Patent and Trademark Office ("PTO") on October 27, 2015, for the Lucky Peach, as depicted below, for "Restaurant and bar services; Restaurant services; Restaurant services, including sit-down service of food and take-out restaurant services; Restaurant services, namely, providing of food and beverages for consumption on and off the premises."



Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is valid, subsisting, and incontestable. A true and correct copy of the Certificate of Registration for this mark is attached as **Exhibit 2**.

23.     Plaintiff is the owner of a federal trademark registration, Reg. No. 4,836,100, issued by the United States Patent and Trademark Office ("PTO") on October 20, 2015, for the Lucky Peach, as depicted below, for "Restaurant and bar services; Restaurant services; Restaurant services, including sit-down service of food and take-out restaurant services; Restaurant services, namely,

providing of food and beverages for consumption on and off the premises."



Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is valid, subsisting, and incontestable. A true and correct copy of the Certificate of Registration for this mark is attached as **Exhibit 3.**

24.     Plaintiff is the owner of numerous federal registrations for marks incorporating the Lucky Peach, examples of which are shown below, as well as registrations for the word marks PEACH MART, and of course MOMOFUKU, which translates to "lucky peach":



True and correct copies of the Certificates of Registration for these marks are attached collectively as **Exhibit 4**.

26.     The Lucky Peach is conceptually strong, inherently distinctive, and non-functional as to the goods and services in connection with which Momofuku uses it. But the mark has also acquired significant distinctiveness and is commercially strong as well, based on nearly twenty years of continuous and exclusive use in commerce by Momofuku, tens of millions of dollars in sales of

goods and services offered under the mark, tens of millions of dollars in advertising featuring the mark, and extensive unsolicited media attention.

27.     For years, beginning long before Yuzu Kitchen's infringement started, Momofuku has used the Lucky Peach in connection with its New York City restaurants Momofuku Noodle Bar, Momofuku Ssäm Bar, Momofuku Ko, Fuku, Momofuku Nishi, and Má Pêche (translating to "Mother Peach"). Today, Momofuku's Ssäm Bar, Ko, and Noodle Bar continue to serve New Yorkers and out-of-state visitors at locations throughout Manhattan.

28.     The Lucky Peach has come to signify the Momofuku brand in the minds of consumers, the media, and the industry—a brand into which Momofuku has invested millions of dollars and countless employee hours.

29.     Momofuku's restaurants, signified by the Lucky Peach, are some of the most famous and successful restaurants in New York and throughout the United States, and they have received widespread acclaim and recognition.

30.     For example, in 2013, *Bon Appetit* named Momofuku first among the twenty "Most Important Restaurants in America." Momofuku's restaurants have appeared on The S. Pellegrino World's Best Restaurants list fifteen times, and Momofuku has received seven awards from the James Beard Foundation, including "Best New Restaurant," "Rising Star Chef of the Year" (twice), and "Best Chef, New York City." Momofuku has also received two awards for "Best New Restaurant"—each—from *New York Magazine* and *The New York Times*. Meanwhile, Momofuku Ko has been awarded two Michelin stars.

31.     The Lucky Peach mark itself, meanwhile, has received significant unsolicited media attention from *The New York Times, New York Magazine*, *The Washington Post*, *Forbes*, and *Food & Wine Magazine*, with those and many other publications discussing the "Lucky

Peach logo" or "Momofuku's peach logo."

32.    Momofuku's use of the Lucky Peach in interstate commerce has been continuous and exclusive for at least eighteen years.

33.    Momofuku has built up and now owns extremely valuable goodwill that is symbolized by the Lucky Peach. The mark enjoys wide public association with Momofuku, and has come to be recognized widely and favorably by the public in New York and throughout the United States as an indicator of the origin of Momofuku's goods and services. The general purchasing public in New York and in the United States has come to associate the Lucky Peach exclusively with Momofuku.

34.    As a result of the goodwill Momofuku has built up in the Lucky Peach, various licensing arrangements exist for the mark, such that Momofuku's exclusive right to use or license the mark is extremely valuable.

**B.    Yuzu Kitchen's Willful Infringement of the Lucky Peach**

35.    On information and belief, in 2020, Yuzu Kitchen began using a peach design (the "Infringing Peach") as a mark in connection with a Japanese restaurant located in Manhattan. The Infringing Peach uses a color scheme that is nearly identical to that of the Lucky Peach. Yuzu Kitchen prominently features the Infringing Peach standing alone or in various logos, often using lower-case black text next to the Infringing Peach in a manner that calls to mind Momofuku's restaurants. The company displays the Infringing Peach on its website, menu, business card, take-out bags, signage, advertising, marketing, and social media:










36.     On information and belief, Yuzu Kitchen adopted, began using, and continued to
use the Infringing Peach with full knowledge of Momofuku's trademark rights in the Lucky
Peach, and with the intent to cause confusion among consumers and capitalize on that confusion
and the goodwill associated with the Lucky Peach.

37.     At the time Yuzu Kitchen began its infringement, the Lucky Peach was already
distinctive and widely known among the general public in New York and the rest of the United
States and associated exclusively with Momofuku.

11

38.     Yuzu Kitchen is not associated, affiliated, or connected with Momofuku in any way, and its use of the Infringing Peach is not licensed, authorized, sponsored, endorsed, or approved by Momofuku.

39.     Yuzu Kitchen's use in commerce of confusingly similar imitations of the Lucky Peach is likely to deceive, confuse, and mislead actual and prospective purchasers before, during, and/or after purchase into believing that Yuzu Kitchen's goods and services are offered or authorized by, or in some manner associated with, Momofuku, which they are not.

40.     Yuzu Kitchen's use of the letter "Y," or the words "Yuzu" and "Kitchen," in connection with the Infringing Peach does not dispel any such confusion, as consumers are likely to believe that "Yuzu" or "Yuzu Kitchen" is another Momofuku restaurant or sub-brand.

41.     On information and belief, Yuzu Kitchen's conduct has been, and continues to be, willful, wanton, and in bad faith.

42.     The likelihood of confusion, mistake, and deception among consumers engendered by Yuzu Kitchen's use of the Infringing Peach is causing irreparable harm to Momofuku, the goodwill symbolized by the Lucky Peach, and the reputation for quality that the mark embodies.

43.     Yuzu Kitchen's infringing conduct has already caused actual confusion among third parties.

44.     On information and belief, all of Yuzu Kitchen LLC's unlawful conduct has been personally directed and overseen by Defendants Chen and Sun, who at all times relevant have been the sole moving forces behind the above-described infringing activities.

**C.     Momofuku's Efforts to Contact Yuzu Kitchen**

45.     In an effort to protect its rights in the Lucky Peach without resorting to litigation,

Momofuku's in-house counsel sent a cease-and-desist letter to Yuzu Kitchen LLC via email on [MULTIPLE DATES]. Yuzu Kitchen never responded.

46.     On February 17, 2022, Momofuku's outside counsel sent another cease-and-desist—by mail and by hand delivery—to Yuzu Kitchen LLC's location in Manhattan.  Again, Yuzu Kitchen never responded.

47.     On March 7, 2022, Momofuku's outside counsel sent another cease-and-desist letter to Yuzu Kitchen, this time delivered to Defendants Chen and Sun and the registered agent of Yuzu Kitchen LLC. Once again, Yuzu Kitchen never responded.

48.     As of the date of this filing, Yuzu Kitchen continues its infringing conduct unabated.

49.     Accordingly, and because the irreparable harm to Momofuku and danger of deception of consumers continue to grow, Momofuku has been forced to bring this action.

## FIRST CLAIM FOR RELIEF
## FOR TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT
## (15 U.S.C. § 1114)

50.     Momofuku repeats and incorporates by reference the allegations in the preceding paragraphs.

51.     Momofuku is the owner of the trademark registrations attached to this pleading and has exclusive rights in the mark covered by those registrations (the "Lucky Peach").

52.     Yuzu Kitchen's use of confusingly similar imitations of the Lucky Peach is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Yuzu Kitchens goods and services are offered by Momofuku, or are associated or connected with Momofuku, or have the sponsorship, endorsement, or approval of Momofuku.

53.     Yuzu Kitchen's conduct has caused—and unless enjoined by the Court, will

13

continue to cause—a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to Momofuku's goodwill and reputation as symbolized by the Lucky Peach, for which Momofuku has no adequate remedy at law.

54.     Yuzu Kitchen's conduct demonstrates a willful, wanton, and malicious intent to trade on the goodwill associated with the Lucky Peach to Momofuku's great and irreparable harm.

55.     Momofuku is thus entitled to permanent injunctive relief and to recover its costs and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

**SECOND CLAIM FOR RELIEF**
**FOR UNFAIR COMPETITION UNDER THE LANHAM ACT**
**(15 U.S.C. § 1125(a))**

56.     Momofuku repeats and incorporates by reference the allegations in the preceding paragraphs.

57.     Momofuku has continuously, extensively, and exclusively used the Lucky Peach in interstate commerce in the United States since at least as early as 2004.

58.     The Lucky Peach is inherently distinctive, and it acquired significant distinctiveness long before Yuzu Kitchen's infringing conduct began.

59.     Momofuku owns common law trademark rights in the Lucky Peach dating back to at least 2004.

60.     Yuzu Kitchen has made false representations, false descriptions, and false designations of its goods and services by labeling them with, or offering them to consumers under, the Infringing Peach.

61.     Yuzu Kitchen's use of confusingly similar imitations of the Lucky Peach is likely to cause confusion, deception, and mistake by creating the false and misleading impression that

14

Yuzu Kitchens goods and services are offered by Momofuku, or are associated or connected with Momofuku, or have the sponsorship, endorsement, or approval of Momofuku.

62.     Yuzu Kitchen's conduct has caused—and unless enjoined by the Court, will continue to cause—a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to Momofuku's goodwill and reputation as symbolized by the Lucky Peach, for which Momofuku has no adequate remedy at law.

63.     Yuzu Kitchen's conduct demonstrates a willful, wanton, and malicious intent to trade on the goodwill associated with the Lucky Peach to Momofuku's great and irreparable harm.

64.     Momofuku is thus entitled to permanent injunctive relief and to recover  its costs and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

### THIRD CLAIM FOR RELIEF
### FOR INJURY TO BUSINESS REPUTATION AND DILUTION
### (N.Y. GEN. BUS. LAW § 360-1)

65.     Momofuku repeats and incorporates by reference the allegations in the preceding paragraphs.

66.     Momofuku has continuously, extensively, and exclusively used the Lucky Peach in commerce in New York since at least as early as 2004.

67.     The Lucky Peach is inherently distinctive, and it acquired significant distinctiveness among the general public in New York long before Yuzu Kitchen's infringing conduct began.

68.     Momofuku owns common law trademark rights in the Lucky Peach in New York dating back to at least 2004.

69.     Yuzu Kitchen has made false representations, false descriptions, and false

designations of its goods and services by labeling them with, or offering them to consumers under, the Infringing Peach.

70.    Yuzu Kitchen's use of confusingly similar imitations of the Lucky Peach is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Yuzu Kitchens goods and services are offered by Momofuku, or are associated or connected with Momofuku, or have the sponsorship, endorsement, or approval of Momofuku.

71.    Yuzu Kitchen's conduct is diluting and is likely to dilute—and unless enjoined by the Court, will continue to dilute—the distinctive qualities of the Lucky Peach by eroding the public's exclusive identification of the mark with Momofuku and otherwise lessening the capacity of the Lucky Peach to identify and distinguish Momofuku's goods and services.

72.    Yuzu Kitchen's conduct is causing injury to Momofuku's business reputation and the goodwill and reputation symbolized by the Lucky Peach, for which Momofuku has no adequate remedy at law.

73.    Yuzu Kitchen's conduct demonstrates a willful, wanton, and malicious intent to trade on the goodwill associated with the Lucky Peach to Momofuku's great and irreparable harm.

74.    Momofuku is thus entitled to permanent injunctive relief and to recover its costs and reasonable attorneys' fees under N.Y. GEN. BUS. LAW § 360-1.

## FOURTH CLAIM FOR RELIEF
## FOR TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION
## UNDER NEW YORK COMMON LAW

75.    Momofuku repeats and incorporates by reference the allegations in the preceding paragraphs.

76.    Momofuku has continuously, extensively, and exclusively used the Lucky Peach

16

in interstate commerce in the United States since at least as early as 2004.

77.     The Lucky Peach is inherently distinctive, and it acquired significant distinctiveness long before Yuzu Kitchen's infringing conduct began.

78.     Momofuku owns common law trademark rights in the Lucky Peach dating back to at least 2004.

79.     Yuzu Kitchen has made false representations, false descriptions, and false designations of its goods and services by labeling them with, or offering them to consumers under, the Infringing Peach.

80.     Yuzu Kitchen's use of confusingly similar imitations of the Lucky Peach is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Yuzu Kitchens goods and services are offered by Momofuku, or are associated or connected with Momofuku, or have the sponsorship, endorsement, or approval of Momofuku.

81.     Yuzu Kitchen's conduct has caused—and unless enjoined by the Court, will continue to cause—a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to Momofuku's goodwill and reputation as symbolized by the Lucky Peach, for which Momofuku has no adequate remedy at law.

82.     Yuzu Kitchen's conduct demonstrates a willful, wanton, and malicious intent to trade on the goodwill associated with the Lucky Peach to Momofuku's great and irreparable harm.

83.     Momofuku is thus entitled to permanent injunctive relief and to recover  its costs and reasonable attorneys' fees under New York common law.

84.     Further, in light of Yuzu Kitchen's deliberate and malicious use of the Infringing Peach, and the need to deter Yuzu Kitchen and others from engaging in similar conduct in the

future, punitive damages in the amount of at least $10,000 are also appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Momofuku prays that:

1.    Yuzu Kitchen and all of its agents, officers, employees, representatives, successors, assigns, attorneys, including without limitation Defendants Chen and Sun, and all other persons acting in concert or participation with any of them, be enjoined permanently from:

    a.  using in commerce the Infringing Peach or any other copy, reproduction, colorable imitation, or simulation of Momofuku's Lucky Peach on or in connection with food- and beverage-related goods and services;

    b.  passing off, palming off, or assisting in the passing off or palming off Yuzu Kitchen's goods and services as that of Momofuku, or otherwise continuing any and all acts of unfair competition as alleged in this pleading;

    c.  advertising, promoting, offering for sale, or selling food- and beverage-related goods and services under the Infringing Peach or other confusingly similar imitations of the Lucky Peach;

    d.  aiding, abetting, or assisting any other person in doing any act prohibited by the foregoing subparagraphs, including, but not limited to, selling, assigning, or transferring the Yuzu Kitchen restaurant or related goods or materials;

    e.  effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (a) through (d) above; and

f. instructing, assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (e) above.

2. Yuzu Kitchen be ordered to deliver up for impoundment and for destruction, all signs, packaging, bags, advertising, promotional materials, or other materials in the possession, custody, or control of Yuzu Kitchen that feature or display the Infringing Peach in any way or are otherwise found to infringe the Lucky Peach or to otherwise unfairly compete with Momofuku;

3. The Court order Yuzu Kitchen to pay to Momofuku the costs of this action and Momofuku's reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) and state law;

4. The Court order, for purposes of deterrence, Yuzu Kitchen to pay to Momofuku punitive damages in the amount of at least $10,000;

5. Momofuku be awarded prejudgment and post-judgment interest on all monetary awards in the amount of not less than 9%; and

6. The Court order such other and further relief as it may deem just.

## JURY TRIAL DEMAND

Momofuku respectfully demands a trial by jury on all claims and issues so triable.

DATED:  April 6, 2022

Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By: */s/ Robert N. Potter*
    Robert N. Potter (RP5757)

H. Forrest Flemming, III (HF 5835517)
1114 Avenue of the Americas
New York, New York 10036-7703
Telephone:  (212) 775-8733
rpotter@kilpatricktownsend.com
FFlemming@kilpatricktownsend.com

*Attorneys for Plaintiff*